# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **JAY MELANSON,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) **Case No.** |
| **WALGREEN CO.,** an Illinois Corporation, | ) ) ) ) |
| **WALGREEN EASTERN CO., INC.,** a New York Corporation duly authorized to conduct business in the State of Maine, | ) ) ) ) ) ) |
| **and** | ) ) |
| **WALGREENS BOOTS ALLIANCE, INC.,** a Delaware Corporation, | ) ) ) ) |
| Defendants. | ) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jay Melanson, by and through undersigned counsel, hereby complains against Defendant Walgreen Co., Walgreen Eastern Co., Inc., and Walgreens Boots Alliance, Inc., (collectively "Walgreens" or "Defendant"), as follows:

## INTRODUCTION

1. This is an action for violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"); the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq*. ("MHRA"); the Maine Severance Pay Act, 26 M.R.S. § 625-B; the Maine Timely

1

and Full Payment of Wages Law, 26 M.R.S. § 626; and for breach of contract under the common law.

2. This case challenges Defendants' age discrimination against Plaintiff in violation of the ADEA and the MHRA, as well as Defendants' failure to pay Plaintiff severance owed within a reasonable time after he left employment, amounting to a violation of Maine's Severance Pay Act and the Maine Timely and Full Payment of Wages Law. Plaintiff also brings a breach of contract action against Defendants.

## THE PARTIES

3. Plaintiff Jay Melanson ("Melanson") is an individual residing in the Town of Falmouth, County of Cumberland, and State of Maine.

4. Defendant Walgreen Co. is an Illinois Corporation and, upon information and belief, the direct subsidiary of Walgreens Boots Alliance, Inc.

5. Defendant Walgreen Eastern Co., Inc. is a New York Corporation duly authorized to conduct business in the State of Maine, which owns and operates multiple locations of Walgreens and former Rite Aid pharmacies and former retail stores in Maine.

6. Upon information and belief, Walgreens Boots Alliance, Inc. is a Delaware Corporation and the parent company with direct oversight, management, and operation of both Walgreen Co. and Walgreen Eastern Co., Inc.

7. For purposes of this Complaint, the three separate Defendants are an integrated enterprise and/or joint employer, which shares common management,

ownership, direction, oversight, and control of employees. The three Defendants are hereinafter referred to collectively as "Walgreens."

8. Walgreens owns and operates pharmacies and retail drug stores nationwide, doing business in Maine in multiple locations.

9. In September of 2017, Walgreens entered into an Asset Purchase Agreement with Rite Aid to purchase over 1,900 pharmacies and retail stores nationwide, including in Maine.

10. Pursuant to the Amended and Restated Asset Purchase Agreement, Walgreens assumed liability for the payment of severance to certain employees like Plaintiff, who were not offered substantially comparable employment following store closures.

11. Walgreens has employed more than 500 employees for each of 20 or more calendar weeks for the past two years, with employees located nationwide.

## JURISDICTION AND VENUE

12. Prior to filing this Complaint, Melanson filed a charge of discrimination with the Maine Human Rights Commission on June 20, 2019. The Commission administratively dismissed the charge on or about March 16, 2021.

13. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of Cumberland and State of Maine.

14. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## STATEMENT OF FACTS

15. Melanson began working as a pharmacist for Rite Aid in 1980. He continued to work for the Portland Ride Aid store located at 365 Allen Avenue through 2018.

16. Melanson had generally positive performance reviews throughout his tenure with Rite Aid and performed his job duties satisfactorily.

17. At the time of the Asset Purchase Agreement between Rite Aid and Walgreens, Melanson was 62 years old and one of the oldest Pharmacy Managers in the State of Maine working for Rite Aid.

18. Melanson became an employee of Walgreens on or about February 4, 2018.

19. Walgreens assumed many liabilities of Rite Aid as part of the transaction between the two companies, including a severance plan for former Rite Aid employees, and obligations to pay certain employees severance related to store closures.

20. Walgreens implemented a process, set forth in contractual agreements offered to employees, whereby it assessed which former Rite Aid stores would be closed, which employees would be transitions to new roles, which employees would be eligible for severance, and which employees would be placed in a "transition pool" while Walgreens decided where to place them.

21. In April of 2018, Melanson learned the Portland Rite Aid store where he worked would be closed as part of the above transaction.

22. The Portland Rite Aid store where Melanson worked closed on June 6, 2018.

23. Walgreens implemented a process for selecting "the top talent among the management team members and pharmacists," which included Melanson.

24. Walgreens admittedly took management team members' tenure into account in determining whether to retain or terminate them.

25. Walgreens' consideration of employee tenure in determining who to retain and who to let go was a veiled pretext for, if not an overt admission of, age discrimination.

26. Walgreens conducted interviews for the employees who worked in stores that were closing, focusing on an individual manager's experience, skill level, and tenure, among other things.

27. Melanson performed well during his interview, earning a score of 3.6 out of 5.

28. During his interview with Walgreens, Melanson learned that there was the potential of a severance package if he was not selected to go into the transition pool as an applicant based on the interview process.

29. Melanson also learned that if he received an offer of "comparable" employment prior to March 31, 2019, but did not accept the offer, he would not receive a severance package.

30. Walgreens did not have an open store manager position at the time of Melanson's interview in May of 2018 that was located a reasonable distance from his

home. Therefore, Walgreens placed Melanson into the "transition pool" as a pharmacy manager.

31. Transition pool roles like the one Walgreens place Melanson in were temporary; transition pool employees were not regular, full-time, or permanent employees.

32. Walgreens had a contractual agreement with employees based on its Transition Pool Agreement as well as the Walgreens Severance Plan.

33. Under the Walgreens Severance Plan, Melanson was entitled to approximately 32 weeks' worth of severance when Walgreens failed to place him in a full-time, regular, comparable role when it closed the 365 Allen Avenue Portland store.

34. Melanson expressed dissatisfaction with the way he had been placed in a "transition pool" and given incomplete, inaccurate information about exactly what the Walgreens Severance Plan provided.

35. In January of 2019, Melanson remained in the transition pool. Walgreens had contractually agreed that, by March of 2019, if the company failed to place him in a comparable role, he would be entitled to severance.

36. Under the terms of the Transition Pool Agreement, Melanson was free to reject an offer of non-comparable employment from Walgreens without ruining his eligibility for severance.

37. In January of 2019, Walgreens offered Melanson a non-comparable, highly undesirable position at the Yarmouth store.

6

38. The Yarmouth store position was undesirable because it was poorly staffed, with high turnover, and a huge volume that Walgreens itself admitted was not comparable to the Portland store where Melanson formerly worked.

39. Melanson's supervisor, KaBrina Hudson, admitted to him that the Yarmouth store was not comparable to the Portland store, and she did not think he would be successful in the role. In other words, Ms. Hudson acknowledged that Melanson would not have ongoing employment with Walgreens. Nonetheless, Ms. Hudson told Melanson he could "kiss his severance goodbye" if he rejected the Yarmouth store offer. This statement to Melanson was false and intended to pressure him into accepting a non-comparable role in violation of the various contractual agreements described herein.

40. Walgreens demanded an immediate response from Melanson about the offer to work in Yarmouth store, which Melanson declined.

41. After Melanson declined the Yarmouth store, two younger pharmacists who were less experienced and had less tenure were offered more desirable positions in other store locations, which would have been comparable to Melanson's former role in Portland.

42. For example, Walgreens offered Patty Kenney a permanent position in the Scarborough Walgreens store. Ms. Kenney is ten years younger than Melanson.

43. Walgreens placed another coworker who was more than twenty years younger than Melanson in a permanent position in Gray, at a store that was more directly comparable to Melanson's former employment in Portland.

7

44. Walgreens intentionally withheld offers to Melanson for more desirable and comparable positions in an effort to force him out of the company, while at the same time denying him severance.

45. Melanson remained in the transition pool until March 31, 2019, when it was set to expire.

46. Because no other job was offered to Melanson by March 31, 2019, Walgreens terminated his employment on April 2, 2019, and withheld his 32 weeks of severance, which had been earned over more than three decades of service.

47. Walgreens intentionally discriminated against Melanson because of his age and showed a preference for younger workers in its administration of the Transition Pool Agreement.

48. Walgreens furthermore implemented and carried out a policy that had a disparate impact on older workers.

49. Walgreens' stated reasons for terminating Melanson and denying him severance constituted pretext for age discrimination, a violation of the Maine Severance Pay Act, a violation of the Maine Timely and Full Payment of Wages Law, and a breach of contract.

## COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE ADEA
**(29 U.S.C. § 621 *et seq*.)**

50. Plaintiff repeats the allegations contained in Paragraphs 1 through 49 as if fully stated herein.

51. Melanson was a member of a protected class based on his age at the time of his termination.

52. The ADEA makes it illegal for an employer to discriminate against an employee because of age.

53. Defendants' action described above amounted to age discrimination in violation of the ADEA, because Walgreens terminated Melanson because of his age.

54. Alternatively, Walgreens carried out a policy that had a disparate impact on older workers, knowing that it would have the effect of ending Melanson's employment and retaining younger workers instead.

55. As a result of Defendants' age discrimination and willful violation of the ADEA, Melanson has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jay Melanson requests that the Court award him damages for Defendant's violation(s) of the ADEA, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT II – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
**(5 M.R.S. § 4571 *et seq*.)**

56. Plaintiff repeats the allegations contained in Paragraphs 1 through 55 as if fully stated herein.

57. For the reasons set forth in Count I above, the age discrimination and disparate impact to which Walgreens subjected Melanson amounted to unlawful discrimination in employment within the meaning of the Maine Human Rights Act.

WHEREFORE, Plaintiff Jay Melanson requests that the Court award him damages for Defendants' violation of the Maine Human Rights Act, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT III – VIOLATION OF THE MAINE SEVERANCE PAY ACT
### (26 M.R.S. § 625-B)

58. Plaintiff repeats the allegations contained in Paragraphs 1 through 57 as if fully stated herein.

59. Walgreens was a covered establishment within the meaning of Maine's Severance Pay Act because it employed more than 100 persons in the 12-month period before Melanson's termination, and at all other times herein relevant.

60. Melanson was an eligible employee within the meaning of Maine's Severance Pay Act because he was continuously employed by Rite Aid at the time of the Asset Purchase Agreement for more than 30 years, he was not terminated for cause, and he did not accept a regular, permanent position of employment at another Walgreens location.

61. Under the Maine Severance Pay Act, "Any employer who closes . . . a covered establishment is liable to eligible employees of the covered establishment for severance pay at the rate of one week's pay for each year, and partial pay for any partial year, from the last full month of employment by the employee in that establishment. The severance pay to eligible employees is in addition to any final wage payment to the employee and must be paid within one regular pay period after

the employee's last full day of work, notwithstanding any other provisions of law." 26 M.R.S. § 625-B(2).

62. For Walgreens' violation of the Maine Severance Pay Law, Plaintiff is entitled to more than 32 weeks of severance, in addition to attorney's fees and costs.

WHEREFORE, Plaintiff Jay Melanson requests that the Court award him damages for Defendants' violation of the Maine Severance Pay Act, in the form of lost wages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT IV – VIOLATION OF THE MAINE TIMELY AND FULL PAYMENT OF WAGES LAW
### (26 M.R.S. § 626)

63. Plaintiff repeats the allegations contained in Paragraphs 1 through 62 as if fully stated herein.

64. The provisions of Maine's Severance Pay Act make the payment of severance in accordance with the Act payable within "one regular pay period after the employee's last full day of work." 26 M.R.S. § 625-B(2).

65. According to the Maine Severance Pay Act, Melanson should have been paid for at least 32 weeks of severance on or before April 16, 2019.

66. Under Maine's Timely and Full Payment of Wages Law, "An employee leaving employment must be paid in full no later than the employee's next established payday." 26 M.R.S. § 626.

67. Because severance pay should have been included in Melanson's final paycheck, or the next paycheck two weeks later, Walgreens violated Section 626 by failing to provide him with timely and full payment of wages under Maine law.

68. Walgreens is liable to Melanson for not only his unpaid severance, but also liquidated damages amounting to twice the amount of his unpaid severance, plus costs of suit and reasonable attorney's fees.

WHEREFORE, Plaintiff Jay Melanson requests that the Court award him damages for Defendants' violation of the Maine Timely and Full Payment of Wages Law, in the form of lost wages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT V – BREACH OF CONTRACT

69. Plaintiff repeats the allegations contained in Paragraphs 1 through 68 as if fully stated herein.

70. Walgreens entered into a contract with management employees like Melanson, supported by adequate consideration and mutual assent to be bound, in connection with its purchase of more than 1,900 Rite Aid stores.

71. Melanson was induced to perform under the contractual provisions contained in the transition pool plan and the severance plan offered by Walgreens, continuing to work through April of 2019 with the promise of severance if he was not offered "comparable" employment in a regular, permanent position.

72. Walgreens failed to offer Melanson comparable employment and failed to perform under the contracts described above.

73. Melanson has suffered damages as a result of Walgreens' breach of contract, including monetary and consequential damages.

WHEREFORE, Plaintiff Jay Melanson requests that the Court award him damages for Defendants' breach of contract, as well as all other relief afforded to him by law.

## JURY TRIAL DEMAND

Plaintiff Jay Melanson hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Respectfully submitted,

Dated: June 14, 2021            */s/ Laura H. White*

---

Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
lwhite@whiteandquinlan.com


/s/ *Danielle Quinlan*

---

Danielle Quinlan, Bar No. 5480
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
dquinlan@whiteandquinlan.com