UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAY MELANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  2:21-cv-00155-JAW |
| | ) |
| WALGREEN CO., et al., | ) |
| | ) |
| Defendants | ) |

**ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT
AND DEFENDANTS' MOTION TO STRIKE; RECOMMENDED DECISION ON
DEFENDANTS' MOTION TO DISMISS**

Plaintiff alleges that his former employers, Defendants Walgreen Co., Walgreen Eastern Co., Inc. and Walgreens Boots Alliance, Inc., discriminated against him based on his age in violation of the Maine Human Rights Act (MHRA), 5 M.R.S. § 4572(1)(A) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.

Defendants moved to dismiss Plaintiff's complaint and to strike Plaintiff's jury demand. (Motion to Dismiss, ECF No. 13.)  Plaintiff subsequently moved to amend his complaint to allege additional facts, remove certain causes of action,[1] and add a cause of action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. (Motion to Amend, ECF No. 17; Proposed First Amended Complaint, ECF No. 17-1.)

---

[1] In the proposed amended complaint, Plaintiff removed a breach of contract claim, and claims under Maine's Severance Pay Act (26 M.R.S. § 625-B) and Timely and Full Payment of Wages law (26 M.R.S. § 626.)

Following a review of the parties' submissions, I grant Plaintiff's motion to amend and grant in part Defendants' motion to strike. In addition, I recommend the Court dismiss Defendants' motion to dismiss as moot.

## FACTUAL BACKGROUND[2]

Plaintiff worked as a pharmacist for Rite Aid at a store located in Portland, Maine from 1980 to 2018. (Proposed Amended Complaint ¶ 15.) He received generally positive performance reviews throughout his tenure with Rite Aid and performed his job duties satisfactorily. (*Id.* ¶ 16.)

Defendants purchased 1,900 Rite Aid pharmacies and retail stores in 2017, including stores in Maine. (*Id.* ¶ 9.) Pursuant to an agreement with Rite Aid, Defendants assumed liability for the payment of severance to Rite Aid employees whose stores closed and who were not offered comparable employment. (*Id.* ¶¶ 10 & 19.) At the time Defendants purchased Rite Aid's stores, Plaintiff was 62 years old, and one of Rite Aid's oldest pharmacy managers in Maine. (*Id.* ¶ 17.)

Defendants determined which former Rite Aid stores would be closed, which former Rite Aid employees would be transitioned to new roles, which employees would be eligible for severance packages, and which employees would be placed in a "transition pool" while Defendants decided where to place them. (*Id.* ¶ 20.) Defendants set forth the details of this process in written agreements offered to the employees of closing stores. (*Id.*)

---

[2] The facts are derived from Plaintiff's proposed amended complaint.

Defendants also started a process for selecting "the top talent among the management team members and pharmacists" to retain from the closing stores. (*Id.* ¶ 23.) Defendants represented that an employee's tenure would be considered when determining whether to retain the employee. (*Id.* ¶ 24.) As part of the process, Defendants conducted interviews with the employees who worked in stores that had been selected for closure. (*Id.* ¶ 26.) Defendants' interviews focused on each employee's experience, skill level, and tenure, among other factors. (*Id.*)

In April 2018, Plaintiff learned that Defendants planned to close the store in which he worked, which store closed on June 6, 2018. (*Id.* ¶¶ 21-22.) Plaintiff's supervisor interviewed Plaintiff in May 2018. (*Id.* ¶¶ 27, 31, 33.) At the time of Plaintiff's interview, Plaintiff worked a reduced-hours schedule based on problems with his knees; he was also close to retirement. (*Id.* ¶ 27.) During the interview, Plaintiff stated that he did not want to "start over" again in a new store that was "problematic." (*Id.*) Plaintiff also told his supervisor that the company should "hire someone younger" who would have the energy to rebuild a new store. (*Id.*)

While interviewing, Plaintiff learned there was the potential for a severance package if he was not selected for the transition pool. (*Id.* ¶ 30.) Plaintiff contends that although he had a general understanding that Defendants were implementing a Severance Plan (the plan), he never received adequate information about the terms of the plan or how it would be administered. (*Id.*) Plaintiff's supervisor told Plaintiff that if he received an offer of "comparable" employment prior to March 31, 2019, but did not accept the offer, he would not receive a severance package. (*Id.* ¶ 32.) During his employment with Defendants,

3

Defendants never provided Plaintiff with a copy of the Summary Plan Description (SPD), which defined the term "comparable job." (*Id*. ¶ 42; *see* Motion to Dismiss, Exhibit A at 3, ECF No. 13-1.)[3]

At the end of his interview, when his supervisor asked Plaintiff if he had any questions, Plaintiff attempted to ask about the option of severance. (*Id*. ¶ 31.) His supervisor interrupted Plaintiff and told him that if he wanted to get a severance package, he would have to go into the transition pool and hope that a comparable job offer did not materialize. (*Id*.) His supervisor scored Plaintiff a 3.6 out of 5 on his interview and Defendants placed him in the transition pool as a "pharmacy manager" because at the time, there were no open store manager positions at stores located a reasonable distance from Plaintiff's home. (*Id*. ¶¶ 28, 33.) Plaintiff asserts Defendants offered severance packages to other, similarly situated employees when the employees explained during the interview process that they did not want to be placed in other positions and/or stores. (*Id*. ¶ 29.)

Placement in the transition pool was temporary, and employees in the transition pool were not considered regular, full-time, or permanent employees. (*Id*. ¶ 34.) Under the terms of the plan, Plaintiff would have been entitled to approximately 32 weeks of

---

[3] The SPD defines a "Comparable Job" as follows:

> A position that is comparable or better than your previously held position in terms of pay and position level; and which does not involve an unreasonable increase in commuting time/distance vs. your previously held position; all as determined in the sole discretion of the Plan Administrator, and pursuant to any guidelines as may be established by the Plan Administrator from time to time.

(Defendants' Motion, Exhibit A at 3.)

severance pay if Defendants failed to place him in a full-time, regular, comparable position. (*Id.* ¶ 35.) Plaintiff could reject an offer of non-comparable employment from Defendants without jeopardizing his eligibility for a severance package. (*Id.* ¶ 41.)

In January 2019, Defendants offered Plaintiff what they considered to be a comparable job in a store in Yarmouth, Maine. (*Id.* ¶ 43.) Plaintiff did not consider the position comparable because he would work different hours, the store, in his view, was poorly staffed, with high turnover, and the store had higher volume than the store in Portland in which Plaintiff had previously worked. (*Id.* ¶¶ 43-44.) Plaintiff's supervisor agreed that the Yarmouth store was not comparable to the Portland store, and told Plaintiff that she did not think Plaintiff would be successful in the new position. (*Id.* ¶ 45.) She told Plaintiff, however, that if he rejected the Yarmouth store offer, he could "kiss his severance goodbye." (*Id.* ¶ 46.) Defendants insisted on an immediate response from Plaintiff. (*Id.* ¶ 47.) Plaintiff declined the offer. (*Id.*)

After Plaintiff declined Defendants' offer, two younger pharmacists, who were less experienced than Plaintiff and had less tenure, were offered more desirable positions in other store locations, each of which Plaintiff contends would have been comparable to Plaintiff's former position in Portland.[4] (*Id.* ¶¶ 48-50.) Plaintiff signed a "Footprint Optimization – Voluntarily Decline Standard Position Form" at Defendants' insistence. (*Id.* ¶ 52; Motion to Dismiss, Exhibit B at 3.) Plaintiff maintains that Defendants withheld

---

[4] One of the pharmacists was ten years younger than Plaintiff, and the other pharmacist was more than twenty years younger. (*Id.* ¶¶ 49-50.)

information about its decision-making process and what it meant to be offered a "comparable job" under the plan. (*Id.* ¶ 53.)

Plaintiff remained in the transition pool until March 31, 2019, when the transition pool was set to expire. (*Id.* ¶ 55.) Defendants did not offer Plaintiff any other positions and terminated his employment on April 2, 2019. (*Id.* ¶ 56.) Defendants did not pay Plaintiff severance. (*Id.*)

## PLAINTIFF'S MOTION TO AMEND

Courts should grant leave to amend "freely" when "justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is properly denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Defendants first argue Plaintiff was dilatory in filing his motion to amend. (Opposition to Motion to Amend at 1-4, ECF No. 20.) Plaintiff commenced this action with the filing of a complaint on June 14, 2021. After Defendants were served with the complaint, Defendants requested and were granted two extensions of the deadline to respond to the complaint in part to permit the parties to explore settlement. When the parties failed to resolve the matter at a judicial settlement conference in November 2021, the court established November 23, 2021, as the deadline for Defendant's response to the complaint. On November 23, 2021, Defendants filed a motion to dismiss. Plaintiff moved to amend his complaint on December 28, 2021, which was the deadline for Plaintiff to file

his response to Defendants' motion to dismiss.[5] Given that the parties in essence agreed to hold the matter in abeyance until after the judicial settlement conference, that Defendants did not file a response to the complaint until more than five months after the filing of the complaint, and that the Court had not established a deadline for the amendment of pleadings,[6] Defendants' argument that Plaintiff was dilatory in filing the motion to amend fails.

Defendants also ask the Court to deny the motion to amend because the proposed amendment would be futile. A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). In other words, "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton,* 987 F.2d 855, 868 (1st Cir. 1993). Defendants' futility argument essentially reiterates the arguments Defendants asserts in support of their motion to dismiss the original complaint. Defendants argue the proposed amended complaint would be futile because the non-ERISA

---

[5] Plaintiff moved to extend the deadline for his response to the motion to dismiss from December 14, 2021, to December 28, 2021. (Motion, ECF No. 14.) The Court granted the requested extension. (Order, ECF No. 15.)

[6] *See Ramirez v. DeCoster*, No. 2:11-cv-00294-JAW, 2012 WL 2367179, at *6-7 (D. Me. June 21, 2012) (granting plaintiff leave to file a second amended complaint where no deadline for filing amended pleadings had been set, the plaintiff timely moved to further amend the complaint, and the proposed amendments sought to correct issues raised in pending motions to dismiss).

claims are preempted by ERISA and Plaintiff has not exhausted the administrative process on the ERISA claim.

Plaintiff brings claims of age discrimination under both the MHRA, 5 M.R.S. § 4572(1), and the ADEA, 29 U.S.C. §§ 621-634.[7]  "'Maine courts apply the MHRA in accordance with federal anti-discrimination law,' including the … ADEA …." *Lustgarten v. Lowe's Home Ctrs., LLC*, Docket No. 2:15-cv-289-NT, 2015 WL 7312442, at *2 (D. Me. Nov. 19, 2015) (quoting *Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295, 303 n.3 (D. Me. 2008)).  To state a prima facie claim for age discrimination[8] under the ADEA, Plaintiff must establish that "(1) he was 40 or older; (2) his job performance met legitimate expectations; (3) the employer subjected him to an adverse employment action against him; and (4) age was the 'but for' factor in the adverse employment action." *Robson v. Shaws Supermarkets Inc.,* 411 F. Supp. 3d 58, 70 (D. Me. 2019); *see also Velez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 446-7 (1st Cir. 2009) (same).  To satisfy the fourth element, "the plaintiff may demonstrate either that the employer did not treat age neutrally or that younger persons were retained in the same position." *Hidalgo v. Overseas Condado Ins.*

---

[7] The MHRA provides that it is unlawful employment discrimination for an employer "to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment" because of a person's age. 5 M.R.S. § 4572(1)(A).  The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

[8] To meet the "plausibility" standard to survive a motion to dismiss, a plaintiff must plead "enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

*Agencies, Inc.*, 120 F.3d 328, 333 (1st Cir. 1997) (internal quotation marks and citations omitted).

Based on Plaintiff's alleged facts and the reasonable inferences drawn from the alleged facts, Plaintiff was 62 years old at the time his employment was terminated; he had performed his job satisfactorily, as evidenced by generally positive performance reviews; Defendants failed to offer him a "comparable job" despite the availability of "comparable jobs;" Defendants offered him a non-comparable job to preclude him from severance when he declined the job; Defendants hired much younger people to fill "comparable jobs;" and Defendants ultimately terminated Plaintiff's employment and did not pay severance.[9]

Plaintiff's proposed amended complaint states a prima facie claim for age discrimination. ERISA does not preempt Plaintiff's claims under the ADEA. "Section 514(d), 29 U.S.C. § 1144(d), … provides that '[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States … or any rule or regulation issued under such law.'" *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 91 (1983).

Defendants, however, contend that Plaintiff's age discrimination claims under the MHRA are preempted by ERISA. ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). There are two types of preemption under ERISA, "(1) 'complete preemption,' a subject-matter

---

[9] "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consolidated Coin Caterers Corp*., 517 U.S. 308, 313 (1996).

'jurisdictional doctrine' that applies to disputes arising from removal …; and (2) 'express preemption,' related to a claim's substantive merit (as opposed to subject-matter jurisdiction), that '… creates only a traditional preemption defense.'" *Wilson v. Unum Group*, Civil Case No. 20-122-DLB, 2021 WL 4268046, at * 2 (E.D. Ky. Sept. 20, 2021) (quoting *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016)).[10] Express ERISA preemption is relevant here.

"Although many state anti-discrimination laws that relate to ERISA plans may beget ERISA preemption, some do not." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 197 (1st Cir. 2015). As the First Circuit has observed, "ERISA does not preempt federal antidiscrimination laws," such as the ADEA, and thus, "state antidiscrimination laws are immune to ERISA preemption insofar as they prohibit conduct proscribed by federal law." *Id*.[11] Other courts agree that the ADEA, "[l]ike Title VII, … provides for what the Supreme Court in *Shaw* termed 'joint state/federal enforcement' of the rights protected by federal antidiscrimination law…. Thus, the New York Human Rights Law is saved from preemption in this case precisely to the extent that its protections track those of the ADEA." *Devlin v. Trans. Commc'ns Int'l Union*, 173 F.3d 94, 100 (2d Cir. 1999) (quoting *Shaw*, 463 U.S. at 102). The Second Circuit, like the First Circuit with respect to the MHRA, has

---

[10] Given its "frustratingly perplexing nature," the *Wilson* court notes, "ERISA preemption is 'a doctrine only a judge could love.'" *Id*. (quoting *Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012)).

[11] "[T]o the extent a state anti-discrimination law prohibits more conduct than its federal counterpart," however, "it is preempted when applied to an ERISA plan." *Id*. (citing *Shaw*, 463 U.S. at 103-04). For example, the MHRA, unlike the ADEA, does not restrict claims for age discrimination to persons 40 years of age and older. *See Robson*, 411 F. Supp. 3d at 71 n.4. This difference between the MHRA and the ADEA is not a factor here, because Plaintiff was 62 years old at the time of the relevant events.

10

"consistently held that age discrimination claims" brought under the state's Human Rights Law "are governed by the same standards as those brought under the ADEA." *Id*. Thus, the *Devlin* court found "that no portion of the Human Rights Law—as it relates to [claimant's] age discrimination claims—will be pre-empted by ERISA." *Id*. at 100-01. Similarly, the Sixth Circuit reasoned that the ADEA "uses state-law counterparts to bolster enforcement of the federal law. Section [514(d)] thus preserves state-law claims from preemption to the extent they mirror ADEA claims." *Loffredo v. Daimler AG*, 500 App'x 491, 498 (6th Cir. 2012).

Defendants contend Plaintiff's claims under the MHRA are preempted because the claims are different than the age discrimination claim he asserts under the ADEA. Defendants note that Plaintiff's state law claim is based on Defendants' denial of severance benefits under the plan. According to Defendants, Plaintiff contends he was denied benefits under the plan and was not permitted to retire because of his age, the length of his tenure, and the amount of the severance package he had earned.

"[A] state law claim in which the plaintiff 'complains only to rectify a wrongful denial of benefits,' is preempted by the Act." *Adams v. N. New England Tel. Ops*., LLC, Civ. No. 08-296-B-W, 2009 WL 2712970, at *9 (D. Me. Aug. 27, 2009) (quoting *Aetna Health Inc. v. Davila*, 452 U.S. 200, 214 (2004)); *but see Brown v. Bank of America, N.A*, 5 F. Supp. 3d 121, 137-38 (D. Me. 2014) (ERISA does not preempt claims under state human rights laws, including the MHRA) (citing *Davila*, 452 U.S. at 206).[12] That is, where

---

[12] In *Brown*, the Court noted that the plaintiff sought damages for lost pension and other benefits, and stated that it need not resolve the issue of whether the plaintiff could be awarded such damages under her state

11

Case 2:21-cv-00155-JAW   Document 22   Filed 02/28/22   Page 12 of 18   PageID #: 125

a plaintiff "complains only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans," *Davila*, 452 U.S. at 211, or seeks "only to rectify a wrongful denial of benefits," *id*. at 214, state law claims are preempted by ERISA.

ERISA, however, "does not preempt state law claims related to … discrimination … simply because the employer offers [benefits] … in an ERISA-regulated benefit plan." *Id*. Where "a plaintiff alleges mixed motives for his termination—that he was terminated because of the employer's benefits-defeating motive and because of his age—the plaintiff has alleged a legal basis, independent of ERISA, for his claim, and as such, his age discrimination claim is not … preempted." *Morton v. Nexagen Networks, Inc*., Case No. 8:18-cv-386-T-24 MAP, 2018 WL 1899038, at *3 (M.D. Fla. April 20, 2018). In *Morton*, the plaintiff argued there was a "mixed motive for his termination—a benefits-defeating motive, as well as an age discrimination motive." *Id*. at *4.

In this case, Plaintiff alleges that he was assigned to the transition pool and offered a non-comparable position he would be expected to decline to enable Defendants to deny him the severance package under the plan. Plaintiff also alleges that while he was a member of the transition pool, two significantly younger employees were offered "comparable jobs" he would have accepted and continued to work. Instead, his employment was subsequently terminated. "Thus, Plaintiff's claim—that Defendants

---

law causes of action at the summary judgment stage. 5 F. Supp. 3d at 138 n.18. Here, Plaintiff seeks back pay, front pay, and compensatory, liquidated, and punitive damages, as well as "equitable and injunctive relief" on his ADEA and MHRA counts. (Proposed Amended Complaint, Count I at 11, Count II at 12.) With respect to his ERISA claim under Section 510, he seeks "equitable and injunctive relief, monetary damages, [and] restitution." (*Id*., Count III at 13.)

12

terminated him because of his age and treated him differently due to his age—is supported by a legal basis independent of ERISA." *Id.* In short, Plaintiff's claims under the MHRA, other than his claim for relief based on the denial of severance benefits, are not preempted by ERISA.

Defendants also argue that the choice of law provision in the SPD "precludes Plaintiff's claim under the MHRA." (Defendants' Opposition to Motion to Amend at 5, ECF No. 20.) The SPD provides that it is "governed and construed in accordance" with ERISA, and, "in the event that any reference be made to state law, the laws of the state of Illinois will apply, without regard to its conflicts of law provisions." (SPD at 6.)

The question is whether it is necessary or appropriate for the Court to make the choice-of-law determination at this stage of the proceedings. The First Circuit has noted:

> [T]he optimal timing for a choice-of-law determination is case-specific. In many cases, the relevant facts are sufficiently clear that delay in making a choice-of-law determination would serve no useful purpose. In such cases, the court is free to make a choice-of-law determination on the basis of the plaintiff's complaint. In other cases, though, the record is more tenuous, and the complaint itself leaves unanswered questions about critical aspects of the pertinent facts. In such cases, a district court is well-advised to refrain from making an immediate choice-of-law determination.

*Foisie v. Worcester Polytechnic Institute*, 967 F.3d 27, 42 (1st Cir. 2020).

Here, given that the parties have not fully developed the choice of law argument to this point, that the First Circuit has not determined the approach to follow to resolve choice-of-law issues in ERISA cases, that there appears to be a lack of consensus as to the

appropriate approach to choice-of-law determinations in ERISA cases,[13] and that the proposed amended complaint would not be futile regardless of the resolution of the choice-of-law issue, resolution of the issue is appropriately deferred until further development of the record and argument.

Defendants' exhaustion argument also does not render the proposed amended complaint futile. Defendants argue that Plaintiff failed to plead that he exhausted his administrative remedies under the plan as required by ERISA, and therefore his ERISA claim must be dismissed.[14] A plaintiff making a claim under ERISA "must first exhaust all administrative remedies that the fiduciary provides." *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2009).

---

[13] The Sixth, Ninth and Tenth Circuits have each articulated their own standards to apply when a choice-of-law issue arises in an ERISA matter. *See DaimlerChrysler Corp. v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) (applying Restatement (Second) of Conflict of Laws, § 187 (1971)); *Wang Labs. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993) (choice-of-law provision in an ERISA plan should be followed if "not unreasonable or fundamentally unfair."); *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1288 (10th Cir. 2020) (ERISA plan choice-of-law should apply "if the plan has a legitimate connection to the State whose law is chosen.").

[14] 29 U.S.C. § 1140 (ERISA section 510) provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or by statute] or for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan [or by statute].... The provisions of section 1132 [ERISA § 502] of this title shall be applicable in the enforcement of this section.

"In enacting section 510, Congress' primary aim was to prevent unscrupulous employers from discharging or harassing their employe[e]s in order to keep them from obtaining vested pension rights or other benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). The "ultimate inquiry in a section 510 case is whether the employment action was taken with the specific intent of interfering with the employee's ERISA benefits." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995). Plaintiff's proposed amended complaint establishes a prima facie claim under section 510.

14

As Defendants acknowledge, a failure to exhaust administrative remedies "is not a jurisdictional bar." (Defendants' Motion at 15.) Further, "most courts hold that, unlike claims for denial of benefits under ERISA, plaintiffs are not required to exhaust administrative remedies for statutory-based violations" under section 510. *United Paperworkers Int'l Union v. In'l Paper Co.*, 777 F. Supp. 1010, 1017 (D. Me. 1991). *See also Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 284 (D. Mass. 1987); *Alexander v. Fujitsu Bus. Commc'n Sys., Inc.*, 818 F. Supp. 462, 471 (D. N.H. 1993). While the First Circuit has not squarely addressed the issue, it has observed that claims for past due benefits based on ERISA plans are contractual in nature even if they are "artfully dressed in statutory clothing. If [the court] were to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless." *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988) (claim for past due disability benefits); *see also Madera*, 426 F.3d at 63 (same with respect to severance benefits).

Plaintiff seeks back pay, front pay, and compensatory, liquidated, and punitive damages, as well as equitable relief, pursuant to his age discrimination claims (*see* Proposed Amended Complaint, Counts I & II), and equitable and injunctive relief, monetary damages and restitution pursuant to his section 510 claim (*id.*, Count III). "[A]ny claim for [section 510] relief proceeds under § 1132, 29 U.S.C. § 1140…." *Kane v. VSI Meter Servs., Inc.*, 723 F. Supp. 2d 268, 271 (D. Me. 2010). Available relief under section 510 includes both equitable relief and potential contractual relief. *Id.*; 29 U.S.C. § 1132. The Court is "not yet called upon to decide what relief might be available under § 1132"

15

in this matter.  *Kane*, 732 F. Supp. 2d at 271.  In such circumstances, given the complexity of the issue, the preliminary stage of the lawsuit and the lack of thoroughly developed argument by Defendants or any argument at all from Plaintiff, it is unclear whether an exhaustion requirement applies.  *See id*.

The First Circuit, moreover, has noted that "[t]raditional exhaustion principles do include an exception for instances 'when resort to the administrative route is futile or the remedy inadequate.'"  *Drinkwater*, 846 F.2d at 826 (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)); *see also Madera*, 426 F.3d at 62 (citing *Drinkwater*).  Even if Plaintiff would have to claim futility to excuse an alleged failure to exhaust, a factual record would be required to assess the argument.  *Drinkwater*, 846 F.2d at 826.  Such an argument would be outside the parameters of a motion to dismiss.  *Freeman*, 714 F.3d at 37.  Plaintiff's ERISA claim in the proposed amended complaint, therefore, cannot be deemed futile at this stage of the proceedings based on the alleged failure to exhaust.

### DEFENDANTS' MOTION TO STRIKE JURY DEMAND

As part of their motion to dismiss, Defendants move to strike Plaintiff's demand for a jury trial and renew their motion to strike in their opposition to Plaintiff's motion to amend.  As Defendants argue, the weight of authority from other circuit courts hold that there is no right to a jury trial for a claim made pursuant to ERISA.  *See, e.g. Medina v. Triple-S Vida, Inc.*, 832 F. Supp. 2d 117, 120-21 (D. P.R. 2011) (collecting cases); *McLaughlin v. Reynolds*, 886 F. Supp. 902, 908 (D. Me. 1995); *see also* 29 U.S.C. § 1132(a)(1)(B) (no express right to a jury trial).  Plaintiff is not entitled to a jury trial on his ERISA claim.

The ADEA, however, provides that a "person aggrieved" may bring a civil action and "shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action." 29 U.S.C. §§ 626(c)(1)-(2). Moreover, under the Seventh Amendment, "[w]hen an action involves a combination of both legal and equitable claims, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" *Nickless v. DiStefano* (*In re Basile*), 472 B.R. 147, 152 (Bankr. D. Mass. 2012) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.10 (1974)). As a consequence, "facts common to legal and equitable claims must be adjudicated by a jury." *Id*. (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959).[15] Plaintiff thus is entitled to a jury on his age discrimination claims.

## CONCLUSION

Based on the foregoing analysis, I grant Plaintiff's motion to amend his complaint. I grant in part and deny in part Defendants' motion to strike jury demand, allowing Plaintiff a trial by jury on his age discrimination claims, but denying him a jury trial on his ERISA claim. In addition, because I have determined Plaintiff's proposed amended complaint would not be futile and because Defendants' motion to dismiss the original complaint was based largely on the issues raised in support of Defendants' futility argument, I recommend the Court dismiss as moot Defendants' motion to dismiss.

---

[15] The *In re Basil* court notes further that the "right to a trial by jury must be preserved even if the legal claims are characterized as incidental to the equitable claims." *Id*. (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962)).

## **NOTICE**

Any objections to the order on the motion to amend and the motion to strike shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.


/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of February, 2022.